## THE PEOPLE, Respondents, *v.* THE OWYHEE MINING CO., Appellant.

Assessment — Taxation — Possessory Title — Improvements — Public Land.—It is proper to list and assess a mill-site and the immovable improvements upon public land, as real estate; but movable property situated thereon, such as a blacksmith shop, retort house, barn, carpenter shop, and the like must be listed, assessed, and taxed as personal property.

Improvements—Definition.—By the term "improvements" on public lands, as used in the revenue law, is meant the buildings and improvements belonging to the possessory claimant, such as miners' buildings, quartz-mills, sawmills, out-buildings, fences, etc.

Assessment—Taxation.—The four classes of property mentioned in the revenue law as subject to taxation, are to be listed, set down, and valued separately in the assessment roll.

Estoppel—Taxation—Assessment.—The owner of property subject to taxation is not estopped from disputing the correctness of the descriptions of property listed and given in by him under oath to the assessor.

Assessor.—The assessor is not bound by the valuation placed upon real or personal property by the owner thereof. The assessor is responsible for the correctness of descriptions of property assessed by him.

Construction of Statutes.—In construing statutes, words are to be understood in their general signification; and when any doubt arises, although the doubt attaches only to a particular clause, the whole act is to be taken and examined together, in order to arrive at the true legislative intent.

Public Lands—Taxation.—No law of the territory can authorize the sale of the lands of the United States for taxes; such a sale would be void.

ASSESSMENT.—In order to be valid, an assessment of property for taxation must substantially conform to the requirements of the revenue law in respect to the classification of the property. If it does not so conform it is void.

APPEAL from the third judicial district, Owyhee county.

*H. L. Preston and F. E. Ensign,* for the appellants.

*L. P. Higbee and J. W. Huston,* for the respondents.

NOGGLE, C. J., delivered the opinion. WHITSON, J., concurred. LEWIS, J., dissented.

This is an appeal from the district court for Owyhee county from the order of that court refusing a new trial. Judgment was rendered on the twenty-fifth day of November, 1869, against the defendants, for the sum of three thousand four hundred and thirty-seven dollars and ninety-one cents ($3,437 91) for taxes, and for eight hundred and sixty-four dollars and thirty-one cents costs of action. A motion was made for a new trial, which motion appears to have been filed January 30, 1870, and about that time overruled by the court. This case is now before the court upon appeal from the order refusing to grant a new trial. Several questions have been urged in favor of the judgment for taxes in the case, and also against the same. We have decided that the order refusing a new trial must be reversed for error in assessment hereinafter set forth, and for the following reasons: We do not find that the land on which the quartz-mill and other erections are is taxed, but the facts fatal to this case are that "a mill-site situated on the east side of Jordan creek, about half a mile below Silver City in Owyhee county, Idaho territory, and known as East Ruby, together with a twenty-stamp quartz-mill and appurtenances, a blacksmith shop, barn, retort house, carpenter shop, laboratory, warehouse, boarding-house, office, and other improvements thereon, and known as the Owyhee company's mill property, valued altogether at ninety thousand dollars."

In this case the mill-site, buildings, and erections thereon,

are all listed together under the head of real estate, and no words were used to limit the interest in the lands intended to be taxed to a claim, or possessing interest, but the term used was "a mill-site" situated, etc., together with a twenty-stamp quartz-mill and appurtenances, blacksmith shop, barn, etc. It is unnecessary to claim that the quartz-mill and other buildings are not sufficiently described; but the description of the land does not conform in any particular to the description required under the third subdivision of the eighteenth section of the revenue act of 1869. The manner of listing the real estate should at least comply with the requirements of the fourth subdivision of said section 18, viz., "the cash value of real estate and the improvements thereon."

The land, mill, and other buildings are listed and valued in one estimate in gross. The mill-site is agreed by both parties to be a possessory interest in public lands upon which there is erected for the owners' convenience the following personal property, viz.: A quartz-mill, blacksmith shop, barn, retort house, carpenter shop, laboratory, warehouse, office, boarding-house, and other improvements. It is proper to list and value the mill-site or land, and the immovable improvements thereon as real estate; but the quartz-mill, blacksmith shop, retort house, barn, carpenter shop, laboratory, warehouse, office, boarding-house, and other erections, etc., being movable property, must be listed, valued, and assessed under the last part of section 5 of said revenue act as personal property.

By section 4 of the revenue act taxable property is divided into two general classes: 1. Real property which simply means real estate. 2. Personal property. The term real property includes lands, and immovable improvements thereon, and the term personal property shall include all property except real property. By section 5 of said act, real estate, or real property is declared to mean: 1. The ownership of any land. 2. Any possessory claim or interest in land, public or private, where the title, meaning the fee, is not in the possessory claimant, and the same revenue law provides that possessory claims shall be listed to the claim-

ant under the head of real estate, while personal property in section 5, aforesaid, is defined to be all houses, buildings, fences, structures, erections, or other improvements built or erected on any lands, whether such lands be private property, or the property of the territory, or of the United States, etc. It is claimed by the plaintiffs, that these sections of the revenue act are inconsistent. That section 4 defines real estate to be lands and immovable property thereon, while section 5 makes buildings, fences, etc., on land (both private and public) personal property, because fences and buildings are claimed by the plaintiffs to be immovable property, a part of the realty. If these two sections can be harmoniously construed so that the validity of both shall be sustained, and so that both may stand in force, then the plaintiff's position is not sound, and the admitted errors are fatal to the case.

Evidently, the ownership of land shall include all real estate, in its common law signification, where the fee belongs to the person in possession, and the personal improvements belong to the owner of the fee. This is real estate in its highest sense. Lands, tenements, and hereditaments, are included under the general term, land. By including all leasehold estates, and all possessory claims and actual possession of public lands as the second class of realty, to be listed and taxed as such, then all improvements not immovable, such as buildings, fences, etc., put upon public lands, and all buildings, etc., put by the lessee upon his landlord's estate, which, by the tenure of the lease, are not to belong to the landlord, are, in contemplation of the revenue act, subject to be removed off, and do, in fact, belong to the tenant; and of this character of property are buildings, fences, etc., on public lands of the United States; and all such property is to be listed as personal property to the owner of the buildings, etc., and not to the owner of the fee; and this is upon the ground, that no permanent fixture can attach to a mere possessory interest in land. Hence, this rule must be particularly followed in regard to public lands, where the fee is in the United States.

If A. is the owner of land in fee, and B. has a leasehold estate in the land for any term, great or small, and has a shop or any other building, or fence, erected thereon by him, and which belong to him, the land in fee, with the immovable fixtures belonging to the fee, must be listed to the owner of the fee, A., as realty; the leasehold estate of B. must be listed to him as realty, and the shop, buildings, or other improvements of B., which belong to him, must be listed to him as personal property; and where a party holds a possessory interest, or claim, upon lands belonging to the United States, that interest must be listed to him as real property, particularly showing whether it be a possessory claim, leasehold estate, or whatever it may be; but his buildings and improvements on such claim must be listed to him as personal property, with a description of the property. This construction is in harmony with the provisions of section 18, aforesaid, which provides that the assessment-roll shall contain, "a list of all real estate, improvements on public lands, and other personal property."

All real estate extends to and includes both subdivisions of real estate above stated; all improvements on public lands means the buildings and improvements belonging to the possessory claimant, such as miners' buildings, quartz-mills, sawmills, out-buildings, fences, etc. All personal property means all transitory personal property, of whatever nature or kind not otherwise exempt, and all but the first of these classes, are to be taken and considered as personal property.

The four classes of property mentioned in the revenue law are to be listed, set down, and valued separately in an assessment roll: 1. The date of the assessment. 2. The taxpayer's name. 3. A description of property; and this description should particularly describe each class of property as the law requires—all improvements on public lands, describing as nearly as possible the location of such improvements. 4. The cash value of real estate and improvements thereon. 5. The cash value of all improvements on real estate, when the same is assessed to a person other than the owner of said real estate. 6. The cash value of all per-

sonal property,. except improvements on real estate or pub-
lic lands, taxable to each.    This last class of other or
transitory property is not required to be particularly de-
scribed in the assessment roll; its value is only given in its
column.    7. The total value of all property.

We think when properly considered, the law is consistent,
reasonable, and just; nothing seems to have been left out,
and nothing need be supplied.    The plaintiffs in this case
seeming to admit that the revenue law has not been com-
plied with, insist that the appellants should be estopped
from denying the correctness of the descriptions given
under oath by themselves to the assessor.    We do not so
understand the case or the law that governs it.    This might
be conceded to be a proper rule under section 11 of the
revenue law of 1869, which provided that the president,
cashier, treasurer, or managing agent of a corporation,
association, or company, shall give to the assessor when
demanded by him, a particular description, under oath or
affirmation, of all the real estate owned, claimed by, or in
the possession, or control, of such firm, corporation, asso-
ciation, or company, also a complete statement under oath
or affirmation, of all personal property, within said county,
belonging to such person, firm, corporation, etc.; which
statement shall be entered by the assessor in a book to be
kept by him for that purpose, etc.; if the defect in the
assessment roll in this case was confined to the description
of the property merely.

Section 11 of the act aforesaid does not require the owner,
officer, or agent, etc., to list the property, real or personal,
under proper and appropriate heads, or to attach any value
thereto, neither would the assessor be bound by an act of
that kind, should it be done.    The provisions of section 11
are enacted for the information of the assessor, which he
may adopt or reject, just as in his judgment he may think
proper.    We can not understand from section 11 how the
defendants can be estopped from objecting to the assess-
ment in this case.    The assessor is responsible for its cor-
rectness.    The rule for the interpretation of statutes is, that
words are always to be understood as having a regard to the

subject-matter, for that is always supposed to be in the mind of the legislator, and all his expressions directed to that end. Words are to be understood in their general signification, and when any doubt arises, although apparently the doubt attached only to a particular clause, the whole act is to be taken together, and to be examined in order to arrive at the true legislative intent.

The intention of the legislature, as is clear from the whole act, was to assess and levy a tax upon the right to possess and occupy any public or private land, within the territory, and not to assess the fee in such lands, whether public or private, to the lessee or individual occupant.

If this interpretation of the law is wrong, then the consequences of the law must fail, and the evil can only be remedied by a change of the law. No law of the territory can authorize the sale of the lands of the United States for taxes. Such a sale would be void. By this interpretation of the act, the assessor is required in listing the property of a taxpayer, after giving the date of the assessment, and the name of the taxpayer, etc., then to set down his land belonging to him in fee, including the immovable improvements thereon, with such a description as is required by section 18, and to assess such land and immovable improvements in a valuation, placed in an appropriate column. Then, to set down any possessory claim or any leasehold estate which he may hold, describing it as possessory or leasehold interest, so as to designate its extent and character, with a description of the land upon which the interest is held, similar to the description of the land of the first class as near as may be, where the fee is taxed, giving the value of the possessory or leasehold interest, as the case may be, without any regard to the value of the fee, which fee, if private property, must be taxed to the owner thereof, and if the fee is in the United States, then the fee can not be taxed. The buildings, structures, etc., belonging to the taxpayer, who does not own the fee upon which each structure stands, shall be listed as improvements on the public lands, and such improvements shall be described and val-

ued separately from the land on which they stand, and from the possessory interest therein, as the first class of personal property.

As the mode of classifying property has been entirely overlooked in this case, and no words are in the description to indicate that the real estate interest in the mill-site was a possessory interest, while upon the trial it is admitted that the fee of the land is in the United States, it follows from necessity that the assessment is erroneous, for it does not substantially conform to the provisions of the statute, and must therefore be held void.

It is unnecessary to determine other questions raised in this case, as the one already decided is fatal to it. The joining of real estate and personal property under the revenue law of 1869, is an error that must reverse the order in the case. This case was strongly urged upon the argument, as being a case founded upon the law so unreasonable, that it could not be complied with by the assessor. If we thought this was so, our opinion might be different. Really we are at a loss to understand why the assessor could not, under the heading of "Description of Property," in the form prescribed by section 18 of the revenue act of 1869, have described every conceivable kind of property mentioned in the act. That column was provided for the purpose of describing minutely the property of the person assessed, whether it be, 1. "Real property," which includes land and improvements thereon, belonging to one and the same person; or, 2. The possessory right or interest in land, less than a fee-simple estate, which must be assessed separately from the improvements on the same; or, 3. The improvements on said last described interest in lands which are classified by the act as one of the kinds of personal property; or, 4. All other kind and species of personal property.

For the benefit of the assessors of this territory, we will now on paper illustrate the filling out of the form given in the revenue law of 1869. Take the case of John Doe for example, who has every kind of property contemplated, as follows, to wit:

Opinion of the Court—Noggle, C. J.

ASSESSMENT-ROLL OF PROPERTY FOR THE FISCAL YEAR ENDING APRIL —.

TO ALL OWNERS AND CLAIMANTS, KNOWN AND UNKNOWN.

| Date of Assessments. | Taxpayer's Name. | Description of Property. | Lot. | Block. | Range. | Number of acres. | Value of land and improvements. | Value of improvem'ts assessed on R. E. to persons other than the owners of said R. E. | Value of personal property. | Poll tax. | Total Value. | Territorial tax. | County tax. | Total tax. | Remarks. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1871 March 5. | John Doe. | A tract of land described, etc., and situated in Owyhee Co., I. T., together with immovable property thereon. | | | | 160 | 2,000 | | | | | | | | |
| | | The possessory interest in and to a tract of land belonging to the U. S., described, etc., and situated in Owyhee Co., I. T. | | | | 160 | 1,000 | | | | | | | | |
| | | Improvements, structures, etc., situated on said last-described premises. | | | | | | 1,000 | | | | | | | |
| | | Horses, mules, and all other personal property. | | | | | | | 500 | | 4,500 | | | | |

As there was evidence of personal property separately assessed in the case, which assessment is not invalidated by any of the objections raised, the order refusing a new trial should be reversed, and this case should be remanded back to the district court with directions to grant a new trial, according to this opinion.

The order refusing a new trial in this case is hereby reversed, and the cause remanded for a new trial.

LEWIS, J., dissenting:

I can not agree with the majority of the court in the conclusion they have reached in this case, nor in the reasoning whereon it is based; for most certainly their views are unsupported by authority, and to my mind not founded upon reason.

The point made by the majority of the court, and upon which their decision is based, is this, that the possessory title to the mill-site and improvements thereon, are jointly assessed, while in their view they should be separately valued. That the description should all be put down in one column, but the value of the possessory title and improvements should be set down in separate columns; the taxes, doubtless, are levied upon the total value of both. Why, then, should they be set down on the assessment-roll separately? No answer is given but "thus saith the law;" but in point of fact such is not the case. Section 5 of the revenue law declares that the term "real estate" shall mean and include the possessory title to lands, while section 18 requires the assessor, under item three in his assessment roll, to list all real estate and improvements thereon; hence as the possessory title to the mill-site is by the statute called real estate, as to this case, it is as if the law declared that the assessor shall in one column put down the possessory title and improvements thereon; then in item four, section 18, he is required to set down the value of the real estate and improvements thereon, not separately as held by this court. Section 41 of the law authorizes a joint judgment against the real estate and im-

provements when jointly assessed, most clearly indicating their joint assessment.

The law then declares that the assessment may be joint; that the real estate that is in this case, the possessory title, and improvements, may be jointly assessed; in fact, the words are that the assessor shall put down in one column the value of the real estate and improvements, and I insist that a court "must not be wiser than the law;" but the majority say that the form of the assessment-roll is set out in section 18, and that the form used by the assessor is different from such form. That is true; but if we look at section 18, it declares that the form shall be in substance like the one set out, and here is wherein, in my view, the majority of this court have erred. They have taken the shadow and not the substance of the law, the letter and not the spirit; they have failed to examine the reason of the law.

The elementary rule in the construction of the law is to examine the reason and spirit of it. (1 Bl. 61; Sedg. 236.) We must look at the cause which moved the legislature to enact the law. (1 Bl. 61; Broome's Maxims, 536.) And it is not a true line of construction, to decide according to the letter, but courts will rather consider what is its fair meaning, and will presume the intent. (Broome's Maxims, 536.) The rules are founded upon reason and common sense, and have existed for ages. What, then, is the reason, object, and purpose of the description of property being given? Most clearly, we answer, to let the taxpayer know that his property is assessed, the amount of the assessment, and the sum due for taxes, that he may, if necessary, go to the board of equalization to have the same equalized, and may pay his taxes. This seems to be the rule as declared in Blackstone on Tax Titles; in 25 Cal. 296; and 2 Comstock, 66.

When, therefore, the description and valuation is such as to answer the object and purpose of the law, the end is accomplished; and, in the case before us, the defendants knew that their property was assessed, the amount thereof, and were in no way misled. Again, when either of two constructions may be given to a statute, one of which de-

feats the object of the law, while the other carries it out, the latter should prevail.

The purpose of legislation should not be defeated on a technical nicety, especially when to uphold the act of the assessor in the case can work no possible injury to any one, while, with the view of the majority herein, over a quarter of a million of dollars is stricken from the tax-roll.