[Filed June 18, 1892.]

## O. & C. R. R. CO. *v.* E. M. CROISAN.

STATE BOARD OF EQUALIZATION — CLASSIFICATION OF REAL PROPERTY.— Under the law of this state, there are, for the purposes of assessment and taxation, but three kinds of real property; by this classification the state board of equalization is bound, and cannot, either on the basis of present ownership, source of title, or otherwise, change the same so as to add new kinds or increase the assessments of individuals or classes of people holding lands of the kinds thus invented.

Marion county: R. P. BOISE, Judge.

Plaintiff appeals. Reversed.

*W. D. Fenton,* for Appellant.

The act is void for uncertainty in that it makes no provisions: (*a*) for the delivery to the state board of equalization of the various assessment rolls sent up by the county clerks to the secretary of state; (*b*) for the state board of equalization to alter, add to, or correct these rolls, or to return them to the secretary of state; (*c*) for the governor, secretary of state, and treasurer to recognize the action of the state board of equalization in reference to fixing the state tax. (2 Hill's Code, §§ 2789, 2799.)

The act in question is void, because there is no provision in relation to notice to the taxpayer, or to the county as an aggregate body, unless it be deemed notice where the statute fixes a day and place certain upon and at which the board convenes. This at best is constructive notice, is insufficient, and is not due process of law, unless the right to a hearing is expressly provided. This is not done. (Cooley Taxation, 2 ed. 361–366; *Stuart* v. *Palmer,* 74 N. Y. 183; 30 Am. Rep. 289; *San Mateo Co.* v. *S. P. R. R. Co.* 13 `Fed. Rep. 722; S. C. 8 Saw.

238; *Santa Clara Co.* v. *S. P. R. R. Co.* 18 Fed. Rep. 385; *Albany City Bank* v. *Maher*, 20 Blatch. 341; *McMillen* v. *Anderson*, 95 U. S. 37; *Hagar* v. *Reclamation Dist.* 111 U. S. 701; *Blake* v. *People*, 109 Ill. 504; *Cahoon* v. *Coe*, 57 N. H. 556; *Davidson* v. *New Orleans*, 96 U. S. 104; 36 N. J. L. 70.)

The action of the board is void, because there was no power in the board under the act to classify real estate. This is a legislative function. (Laws, 1891, 183; 2 Hill's Code, §§ 2729–2776.)

' The act is the mode and measure of power, and the board must find express warrant therein for its action. (*People* v. *Lathrop*, 3 Col. 428; *Getchell* v. *Supervisors*, 51 Iowa, 107; *McKee* v. *Supervisors*, 53 Ill. 478; *People* v. *Nichols*, 49 Ill. 519; *Orr* v. *State Board*, Idaho, Dec. 12, 1891, 28 Pac. Rep. 416; Burroughs Tax. § 101; *Hamilton* v. *State*, 3 Ind. 452; Suth. Stat. Const. § 362; Cooley, Tax. 199; Cooley, Const. Lim. 641; Endlich, Interp. Stat. § 345; *Wells, Fargo & Co.* v. *Board of Equalization*, 56 Cal. 197.)

The act is void, because it was not passed in conformity with section 19, article 4, of the constitution, as affirmatively appears from the house journal. Two thirds of the house did not vote in favor of dispensing with the requirements of the provisions of our constitution. (House Journal, 1891, 966.)

The act, if valid, merely authorized the board to equalize values as returned, and the aggregate of the state could not be increased. The power to assess is lodged in the county assessors and county boards. If the board may increase it fourteen million dollars, they may increase it by any sum, and thus become a tribunal with authority to assess instead of equalizing. (*People* v. *Lathrop*, 3 Col. 428.)

The act is a revenue law; and this is particularly true if the board may increase the aggregate value of the state's assessment, thus practically increasing or decreasing the public revenue. (*Mumford* v. *Sewall*, 11 Or. 71; 50 Am. Rep. 462; State Const. art. 9; art. 4, sec. 18.)

*Geo. H. Williams* and *Raleigh Stott*, for Multnomah county.

Where summary proceedings are authorized by statute, the effect of which is to divest or to affect rights of property, the rule holds good that the statute is to be strictly construed. The power conferred must be executed precisely as it is given, and any departure will vitiate the whole proceeding. It is indeed a general rule that all statutes conferring special ministerial authority by which any man's estate may be affected, must be strictly pursued. (Sedg. Stat. Const. 302; Cooley, Taxation, 209, 290; *State* v. *Hopper*, N. J. March 26, 1892, 23 Atl. Rep. 948.)

Another rule is, that all proceedings for the collection of a tax, from their inception to their end, must be in strict conformity with the requirements of the statute under which they are taken, otherwise they will be void; and tax titles are constantly overthrown by the courts in all parts of the country for technical defects or technical departures from the statute under which they originated. (*Thames Mfg. Co.* v. *Lathrop*, 7 Conn. 550; *Parker* v. *Overman*, 18 How. 137; *Martin* v. *Barbour*, 34 Fed. Rep. 701.)

If the state board of equalization had a right under the act of its creation to raise the state revenues by adding to the assessments made by the county authorities, said act is unconstitutional, as it originated in the senate, and is, in effect, a bill for raising revenue. If, on the other hand, the board had no right to increase the state revenues, under the act of its creation, then, in increasing the assessments in the manner it did, it exceeded its authority, and its acts are void. (*McKee* v. *Supervisors*, 53 Ill. 477.)

The board of equalization had no authority to divide real property into different or distinct classes, and raise or lower the valuation of real estate by said classes. (*Knowlton* v. *Supervisors*, 9 Wis. 410.)

Moreover, assessment and taxation are to be predicated upon a just valuation, and cannot be lawfully based upon

any arbitrary arrangement or classification of property which has no reference to its valuation. (*Cummings* v. *National Bank*, 101 U. S. 153; *Dundee Mortgage Co.* v. *Parrish*, 24 Fed. Rep. 197; *First National Bank* v. *Treasurer*, 25 Fed. Rep. 749.)

There is in this tabulated statement of the board of equalization such a discrimination between different kinds of property, evidently with reference to ownership, as to make the proceedings of the board of equalization invalid. *C. O. Land Co.* v. *Gowen*, 48 Fed. Rep. 722.)

When a law creating a board of equalization provides that it may add to the assessment roll such property as has been omitted by the owner or assessor, but fails to provide that personal notice shall be given the owner of the time or place that the board will make or contemplates making additions to the assessment roll, personal notice must be given to the owner of the property before such assessment will be legal. (*Avant* v. *Flynn*, S. Dak. May 28, 1891, 49 N. W. Rep. 15; *Orr* v. *State Board Equalization*, Idaho, Dec. 12, 1891, 28 Pac. Rep. 416; *Sioux City R. R. Co.* v. *Washington Co.* 3 Neb. 30; *Barnes* v. *Hazleton*, 50 Ill. 429; Cooley, Tax. 256; *R. R. Tax Cas.* 13 Fed. Rep. 751; *O. S. N. Co.* v. *Wasco Co.* 2 Or. 206; *Patten* v. *Green*, 13 Cal. 329; *Stuart* v. *Palmer*, 74 N. Y. 186; 30 Am. Rep. 289.)

Where there is an interdependency of one portion of a statute upon another, and the holding of the one part of the statute would necessarily affect the operation of all other parts of the same statute, then a fatal defect in one part is fatal to the whole statute. (*Santa Clara* v. *R. R. Co.* 118 U. S. 394; *People* v. *Lathrop*, 3 Col. 466.)

*George E. Chamberlain,* attorney-general, and *George G. Bingham,* district attorney, for Respondent.

The state board of equalization has power to add to the assessment of the appellant's property, as well as to increase or decrease the valuation of any other kind of property. (*Braden* v. *Union Trust Co.* 25 Kan. 362; *Russell* v. *Carlisle*, Ky. Apr. 5, 1888,

8 S. W. Rep. 14; *Wells Fargo & Co.* v. *Board Equalization,* 56 Cal. 194; *People* v. *Dunn,* 59 Cal. 328.)

It has been repeatedly held that the action of a state board of equalization, in raising the assessment of a county or district, need not give notice to the individuals who will be affected.    The law fixing the time and place of meeting is sufficient notice to parties interested.    (*State Railroad Tax Cases,* 2 Otto, 575; *State ex rel.* v. *New Lindell Hotel Co.* 9 Mo. App. 450; *Dundy* v. *Comrs.* 8 Neb. 508; *Spaulding* v. *Hill,* 7 S. W. Rep. 27.)

BEAN, J.—This is a suit against Marion county and its sheriff to perpetually enjoin the collection of a certain delinquent tax, claimed by plaintiff to be illegal, and comes here on appeal from a decree sustaining a demurrer to the complaint.    For the purposes of this appeal, it is only necessary to state that the complaint avers that the value of plaintiff's property in Marion county, for the year 1891, including congressional grant, roadbed or track, depot grounds, town and city property, and rolling stock, as listed, described, and assessed by the county assessor, and approved by the county board of equalization, amounted in the aggregate to $348,927.    This property was classified, entered, and described on the county assessment roll, under appropriate heads, as town and city property, other real estate, which included congressional grant and roadbed, and rolling stock.    The state board of equalization, created by and acting under the provisions of the act of February 21, 1891, (Laws, 1891, 182,) at its session in December of that year, divided and classified the real property of the state, appearing on the assessment rolls of the several counties, into railroad lands, wagon-road lands, swamp lands, agricultural, and other lands not included in the former classifications, city and town property, railroad track, telegraph lines, and mortgages, and proceeded to ascertain and determine the rate per centum to be added to

or deducted from the assessed value of each class so adopted in the several counties in the state, combining the result of their work in one table, as by law provided. From this table and the complaint it appears that the portion of the congressional grant of plaintiff in Marion county, still owned by it, was classified as railroad land, and the assessed value thereof increased about fifty per cent; that its roadbed was divided into main line and branch line, and the assessed value of the main line increased forty-two per cent, no change being made in the value of the branch line, and the value of the rolling stock decreased ten per cent. The value of all city and town property in the county was increased ten per cent. The effect of this action of the state board was to increase the taxes of plaintiff in Marion county in the sum of $1,589.69, to enjoin the collection of which this suit is brought.

Several objections are urged by plaintiff to the validity of the action of the state board of equalization in increasing the valuation of its property, but the principal objection is, that it had no authority to divide real property into distinct or different classes and raise or lower the valuation of real estate by said classes; and to this question we shall devote our attention. The act of 1891 creates a state board of equalization, consisting of one member from each judicial district, each of whom, before entering upon the discharge of his duties, shall take an oath to the effect "that he will equalize all the property, both real and personal, as enumerated upon the equalized county assessment rolls of the several counties of the state." It is made the duty of the secretary of the board to compile abstracts of assessment rolls received from the various counties into tabular statements for the use of the board. In equalizing the valuation of property as assessed in the different counties, the board shall consider real and personal property separately, and add to or deduct from the aggregate valuation of the real and several classes of personal property of

every county which they believe to be valued below or above the true and fair value thereof, in money, such per centum in each case as will bring the same to its true and fair value in money, but shall not reduce or increase the aggregate valuations except in such amount as may be reasonably necessary to a just equalization. The result of the work of the board shall be combined in one table, and the chairman and secretary shall certify to the secretary of state the rate per cent to be added to or deducted from the assessed valuation of each class of property in the several counties, who shall, within five days, report the action of the board to the several county clerks; and it is made the duty of the respective county clerks to add to or deduct from each tract or lot of real property in his county the required per centum on the valuation thereof as it stands after the same has been equalized by the county court, and shall also add to or deduct from such class of personal property in his county the required per centum on the valuation thereof as it stands after the same has been equalized by the county court.

The manifest object and intent of this law are to secure justice and equity in the valuation of the several kinds and classes of taxable property as between the several counties. It is not designed, nor is the board authorized or empowered, to equalize or correct errors in the assessments of individual taxpayers. No such power or authority is conferred upon it by law. The valuation of the property of individual taxpayers by the assessor is conclusive upon boards of review, except as the statute may otherwise provide, and such boards cannot change individual assessments unless expressly empowered to do so. (Cooley on Taxation, 419; Desty on Taxation, 496; *Getchell* v. *Supervisors*, 51 Iowa, 107; *People* v. *Nichols*, 49 Ill. 517; *McConkey* v. *Smith*, 73 Ill. 313.) The only tribunals known to the law authorized to change individual assessments are the county board of equalization and the county court. (Hill's Code, §§ 2778-

2782.) After such equalization by the county boards, uniformity in the assessment is supposed to have been secured as between individuals of the county, and it is then for the state board to secure uniformity between the counties. This is not to be done by changing individual assessments, or by adopting some classification unknown to the law, but by adding to or deducting from the aggregate valuations of the several classes of property, as enumerated upon the assessment rolls, such per centum as may be necessary for that purpose, thereby affecting all property of a given class alike. The state board of equalization is bound by the classification of property for the purposes of assessment and taxation made by law and appearing upon the assessment rolls. It has no authority to change the assessment rolls or the classification of property as indicated thereon. The only power it has over the rolls is to ascertain if the valuation of the several classes of property in one county bears a just relation to the valuation of like classes in the other counties; and if it do not, the board can increase or diminish the aggregate valuations. (Desty on Taxation, 496; *Va. & Tenn. R. R. Co.* v. *Washington Co.* 30 Gratt. 471; *People* v. *Nichols*, 49 Ill. 517.)

By the law of this state, for the purposes of assessment and taxation, there are only three classes of real property. First, city, village, or town property, which, if divided into lots and blocks, shall be separately described on the assessment roll (Code, §§ 2770, 2771); second, mortgages, deeds of trust, contracts or obligations whereby land situated in no more than one county is made security for the payment of a debt, together with such debt, which, for the purpose of assessment and taxation, are deemed and treated as land or real property, (section 2730,) abstracts of which are required to be furnished the assessor by the county clerk, and are separately assessed; and, third, all other real property, which is to be described by legal subdivisions, or in such other manner as to make the description certain.

(§§ 2770, 2773.)   To the latter class belongs the land held by the plaintiff, under congressional grant, and all other land not included in the city, village, or town class, as well as its roadbed or track.   This is the only classification of real property known to the law, and the only one the state board is authorized or empowered to adopt or consider.   It cannot subdivide these classes into other or different classes, by reason of the source of title or present ownership.   The classification of property for the purposes of assessment and taxation is a legislative function, and the assessors and boards of equalization are bound by the classification made by the legislature.   (Desty on Taxation, 96.)   Railroad lands, wagon-road lands, swamp lands, railroad tracks, and telegraph lines, are required to be assessed as other real property of like kind and value; and when so assessed by the county assessor and board of equalization, the state board is not authorized to change the specific assessment. It may add to or deduct from the aggregate valuation of the class to which these lands belong a certain per centum, if necessary to equalize such valuation as between the counties, but it has no power to change the individual assessment, or adopt a classification based solely upon the present ownership or source of title.   If it may adopt a classification based upon present ownership, and add to the county valuation thereof a different rate per cent from that added to other property of the same kind, it may treat the property of every individual taxpayer in the same way, and thereby increase the individual assessment without notice to the taxpayer, and in violation of the constitutional provision which requires a uniform and equal rate of assessment and taxation.   If it may classify real property with reference to the source of title, its action affects certain taxpayers because of their title, and not on account of the value or character of land.   It is not clear upon what basis the classification of real property, other than railroad track and telegraph lines, was made by the board, whether from

XXII Or.—26.

the present ownership or source of title. If by railroad lands, the board means lands within grants of congress to aid in the construction of railroads; and by wagon-road lands, such as were granted to the state for wagon-road purposes; and by swamp lands, such as are within the swamp land grant, then it would follow that, by the action of the board, a corporation or individual owning land in Marion county within a railroad grant would have sixty per cent added to the assessed value; the owner of land within a wagon-road grant in Klamath county would have one hundred per cent added to the assessed value; and the owner of swamp land in Harney county would have three hundred per cent added to the assessed value, because it is railroad land, wagon-road land, or swamp land; while a corporation or individual owning the same quantity, quality, and character of adjoining land, purchased from the government or state, or taken under the homestead or preëmption laws, would have only seven per cent added in Marion county, and nothing in either of the other counties, although the two tracts of land are of the same value, and presumedly so assessed by the county assessor and board of equalization.

If, however, as seems more probable from the tabulated statement of the board, the classification is made with reference solely to present ownership, it is an indirect way of increasing the assessment of individual taxpayers without any authority of law for so doing. If the state board can so increase the assessment of one taxpayer, it can do the same with any and every taxpayer in the state by simply classifying his land as Jones' land or Smith's land, as the case may be, and that without regard to, and irrespective of, any action of the county board of equalization, and without notice to the taxpayer. No such extraordinary power was ever contemplated by the law or conferred by the legislature. An acre of railroad land, wagon-road land, or swamp land, is of no more value on account of the

source of title or present ownership than the same quantity and quality of land belonging to another person and held by a different title; nor under the law is there any difference in the mode of its assessment, assessable value, or description on the assessment roll.

There is but one rule for the assessment of real property; and uniformity in the assessment of each of the three classes as between the individual taxpayers is supposed to have been secured by the assessor and county board of equalization, and the only power of the state board is to secure uniformity in the valuation of these classes as between the counties. The attempt of the board, as is apparent from its tabulated statement, to assess the trackage of the several railroads in the state by name, is so obviously an exercise of the power of assessment and not of equalization as to be manifestly unauthorized and void; and if sustained, would empower the board to arbitrarily assess by name any and every taxpayer in the state if it thought proper. A doctrine so startling and fraught with such consequences cannot receive our assent.

It is claimed that the state board, in equalizing the valuation of property as assessed in the different counties must consider all real property as one class, and not in the three classes made by law, and carried out on the assessment roll. There is language in the law creating the board which tends to support such an inference, yet we do not think the legislature intended thus to restrict their powers. The words "shall consider real estate, including town and city lots, and personal property, separately," and "shall add to the aggregate valuations of the real, and several kinds or classes of personal property, in every county, which they believe to be valued below its true and fair value, such per centum in each case as will bring the same to its true and fair value in money," must be understood as referring rather to the object and purpose of the law than as defining and limiting the extent of the powers

of the board. To say that the act creating the state board of equalization is a piece of hasty and crude legislation, is to say what is obvious; but laws of this kind are remedial in their character, intended to correct an admitted evil by requiring each county to pay its just proportion of the burden of maintaining the state government, to suppress wrong, and promote the public good, and should be liberally construed "so as to bring under their operation," says Mr. Endlich, "as well that which is within their meaning as that which is within their letter." (Endlich Interp. Stat. 346.) And when the act in question is so construed, in connection with the provisions of the assessment law to which it relates, we think it manifest the board has power to revise and equalize the aggregate valuation of the several classes of real property authorized by law and enumerated upon the assessment rolls; and so far as it confined its action to such classifications, its acts are valid; but in attempting to divide real property into other classifications, and add a different rate per cent to these classes on account of the manner in which they are designated, its acts were not authorized by law, and are void.

It is also claimed that the action of the state board is in violation of the constitutional provision requiring a uniform and equal rate of assessment and taxation, because the tabulated statement of the board shows that all mortgages in the state are assessed at their full value, while it is contended other real estate is not assessed at more than one-half its real value, and, therefore, there is a "discrimination against the owners of mortgages, and in favor of the owners of other real estate, properly so called, especially agricultural lands." This argument not only assumes the existence of a state of facts not in this record, but also assumes that every assessor and county board of equalization in the state have violated the law they are sworn to obey, which requires all real property to be assessed at its true cash value, which shall be held and taken to mean

the amount such property would sell for at a voluntary sale made in the ordinary course of business, and not what it would bring at public auction or forced sale. (Code, § 2752.) Certainly, before a court can reach such a conclusion, and determine that real estate is not assessed at more than half its value, or at any sum less than its cash value, there should be some allegation and proof of the facts.

It was contended by counsel for Multnomah county that the state board, consisting of the governor, secretary of state, and state treasurer, is to take the abstracts of the assessment rolls, certified by the county clerks of the several counties, and not the tabulated statement of the state board of equalization, as a basis upon which to levy the state tax and apportion the same among the several counties. There are no allegations in the complaint upon which this contention can arise, and nothing to indicate the basis upon which the state board proceeded in making the state levy, and therefore, although it is difficult to conceive that a county or taxpayer could refuse to pay the state tax, for the reason suggested it would be *obiter* for us to undertake to decide the question in this case.

There are some other objections suggested in the brief, but they were not pressed at the argument; and after examination, we do not deem them of sufficient importance to require any further notice.

We conclude, therefore, that the action of the state board by which it increased the county valuation of the roadbed or track and lands of plaintiff, not included in the classification of city, village, or town property, is void and of no effect; but that the per centum added by the board to the assessed value of city, village, or town property must be added to plaintiff's property in Marion county belonging to such class, and the taxes caused thereby paid, before the injunction can be made perpetual.

The complaint not being clear upon this matter, the decree of the court below must be reversed, and the cause remanded to ascertain such amount.