## DAYTON *v.* BOARD OF EQUALIZATION.

[50 Pac. 1009]

1. JURISDICTION OF STATE BOARD OF EQUALIZATION — RECORD.— The jurisdiction of the state board of equalization established by laws, 1891 (p. 182), pertains only to the equalization of the assessment of property to secure uniformity in valuations between the different counties of the state, and its functions are exercised in a summary manner.   There are no parties to its proceedings, nor does it act *in rem*, and a record is not essential to the establishment of jurisdiction of person or thing.   So far as county rolls are concerned the only record provided for is a tabulated statement of the abstracts of the county rolls, prepared by the secretary of the board.   It is not necessary that the rolls themselves be before the board or even on file in the office of the secretary of state.

2. TAXATION — CHARACTER OF STATE BOARD.— The state board of equalization has revisory but not appellate powers, it is merely part of the machinery for equalizing taxes between the various counties: *California Land Co.* v. *Gowen*, 48 Fed. 772, (Or.) approved.

3. NATURE OF WRIT OF REVIEW.— Under section 585 of Hill's Ann. Laws a writ of review is substantially the common law remedy of *certiorari*; it is invoked to determine from an inspection of an entire record whether an inferior tribunal had the jurisdiction which it exercised, or whether it exceeded its jurisdiction, or whether its proceedings were regular: *California Land Co.* v. *Gowen*, 48 Fed. 772 (Or.), approved.

4. IRREGULARITY — COUNTY ROLLS.— It was merely a harmless irregularity that the board of equalization did not have before it the certified copy of the assessment roll of one county, where the record of the board shows that it acted upon an abstract of such county's roll, and that it actually equalized the assessments of such county, together with all the other counties.

5. IRREGULAR CLASSIFICATION — HARMLESS ERROR.— Although the statute (Hill's Ann. Laws, §§ 2770 and 2776) divides real property into only two classes for the purposes of taxation, viz., platted and rural land, it is not a fatal irregularity in the county assessment rolls if the former class is subdivided into "lots" and "improvements on lots."   The state equalization board may properly add the two sets of values, making thereby a single class of the kind indicated by the statute, and then equalize it.

6. POWER OF STATE BOARD TO CORRECT COUNTY ASSESSMENTS.— The state board of equalization has no power to correct errors of county assessors or county boards of equalization, its functions are exercised entirely in adjusting the relative rights of counties.

| | |
|---|---|
| 33 | 131 |
| 33 | 206 |
| 134 | 242 |
| 34 | 246 |
| 33 | 131 |
| 135 | 286 |
| 33 | 131 |
| 38 | 604 |
| 33 | 131 |
| 40 | 470 |
| 33 | 131 |
| 044 | 61 |
| 44 | 84 |
| 33 | 131 |
| 46 | 242 |
| 33 | 131 |
| 48 | 85 |

7. POWER OF COURTS TO CORRECT ASSESSMENTS — REVIEW.—The courts cannot, upon a writ of review from the action of the state board of equalization, correct errors and irregularities of the assessors or county boards in making up their assessment rolls.

8. EQUALITY OF TAXATION REQUIRES UNIFORMITY OF CLASSIFICATION.—To enable the state board of equalization to secure proportional or uniform values among all the counties in the state, as contemplated by the Oregon statutes, there must be uniformity of classification; and the board has no authority to increase the assessment upon a particular class of personal property in one county where the asssessment roll of another county does not recognize such particular class.

From Marion : HENRY H. HEWITT, Judge.

Proceeding in the form of a writ of review by the Dayton Hardware Co. against the State Board of Equalization and Multnomah County to test the propriety of the action of said board in adding twenty-five per cent. to the assessed valuation of plaintiff's stock of merchandise.    There was a judgment for defendants.

REVERSED.

For appellant there was an oral argument by *Messrs. Edward Byers Watson* and *Joseph Simon*.

For respondents there was an oral argument by *Mr. Cicero Milton Idleman*, attorney-general, and *Thad. Stevens Potter*, deputy district attorney.

MR. JUSTICE WOLVERTON delivered the opinion.

The purpose of this proceeding is to review the action of the state board of equalization, and to correct certain errors alleged to have been committed by it, to the injury of plaintiff, in equalizing the assessments throughout the state for the year 1896.    The plaintiff was assessed in Multnomah County on '' merchandise and stock in trade,'' $5,000 ; '' one horse,'' $50,— total, $5,050.    And it is

alleged : That the assessor of said county assessed the taxable property therein by the following classifications, and in the aggregate amounts set opposite, viz. : "Town and city lots, $20,475,948 ; improvements on town and city lots, $9,833,091 ; merchandise and stock in trade, $2,319,690,"—which was equalized by the county board of equalization without change, and the roll certified to the secretary of state, and by him delivered to the state board of equalization ; that said board attempted and pretended to revise and equalize the valuations and assessments of real and personal property appearing on said assessment roll according to said classifications and descriptions, "in connection with certified copies of the assessment rolls of all other counties in the state of Oregon, except the county of Marion" ; "that the clerk of Marion County neglected and refused to make or certify or transmit to the secretary of state, or to furnish said state board of equalization, any copy of the assessment roll of said county for said year, and no duly certified or authenticated copy thereof was before said board, or considered by it," while in the discharge of their duties as such board. It is also alleged that said state board attempted and pretended to classify real property in the several counties in the state as "town and city lots," "improvements on town and city lots," "railroad lands," "wagon-road lands," "other nontillable lands," "tillable lands," "improvements on deeded and patented lands," "railroad tracks," and "telegraph and telephone lines," and to add and deduct percentages to or from the aggregate valuations in the several counties of each of said classes separately, but did not attempt or pretend to raise or equalize the valuation of personal property in Marion County according to the class or kind, except as to livestock, but attempted and pretended to add thirty per cent. to the aggregate valuation of all other personal

property in said county without any other classification or description, thereby increasing the same from $1,327,-961 to $1,726,349 ; that said board added twenty per cent. to the aggregate valuation of " town and city lots " and " improvements on town and city lots," and twenty-five per cent. to the appraised value of " merchandise and stock in trade," as classified upon the assessment roll of Multnomah County.

The return of the secretary of state to the writ has appended thereto a copy of the tabulated statement prepared by the state board of equalization, duly certified, showing that the board equalized real estate in two classes, viz. :   Class 1, comprising " town and city lots " and " improvements on town and city lots " ; and class 2, comprising " railroad lands," " wagon-road lands," " other nontillable lands," "tillable lands," " improvements on deeded and patented lands," "railroad tracks," " telegraph and telephone lines" ; and personal property under the following heads, viz. :   " Horses and mules," " cattle," " sheep and goats," "swine," " merchandise and stock in trade," " farm implements, wagons, carriages, etc.," " steamboats, machinery,. etc.," " money," " notes and accounts," " shares of stock," " household furniture, etc.," " railroad rolling stock," and " improvements on lands not deeded or patented," except as it respects Marion county, which was equalized under three heads only, viz. :   " Livestock," " railroad rolling stock," and " personal property, except livestock and railroad rolling stock."   The board met December 1, 1896, and adjourned *sine die* on the 30th.   Its proceedings show that after repeated efforts to obtain the assessment roll of Marion county, and after having secured, through a committee appointed for that purpose, a summary of such roll, it was, on December 26th, " moved by Wingate, and seconded by Gibson, that the board begin the

preliminary consideration of livestock in Marion County, the rolls of that county having been received," which motion was adopted.   It does not appear in the record, but is admitted by the parties, that the Marion county roll was not filed with the secretary of state prior to January 15, 1897.   The lower court dismissed the writ, and plaintiff appeals.

At the outset it is claimed by the attorney-general that the application for the writ was not made within six months from the date of the determination complained of, but the record was not finally made up until December 30, 1896, and, the application having been made June 29, 1897, it was within the time.

1.   The primary question involved in this proceeding is whether the board ever acquired jurisdiction for the exercise of its functions as an equalizing body.   If this shall be resolved in the affirmative, we may then inquire whether it has exceeded its prescribed powers, or exercised its functions erroneously, to the injury of the plaintiff.   The state board of equalization is a tribunal of judicial cognizance, possessing only inferior or special jurisdiction.   It acts by virtue of the statute which brought it into being and prescribed its powers and functions, and, of course, it can exercise only the powers conferred by express enactment or by necessary implication.   Its jurisdiction pertains only to the subject matter, and its functions are exercised in a summary manner.   There are no parties to its proceedings, nor does it act *in rem;* so that a record is not essential to the establishment of jurisdiction of person or thing.   FOLGER, J., in *Hunt* v. *Hunt*, 72 N. Y. 229, (28 Am. Rep. 129) says: "Jurisdiction of the subject matter is power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a par-

ticular case arising, or which is claimed to have arisen, under that general question." MILLER, J., in *Cooper* v. *Reynolds*, 77 U. S. (10 Wall.) 316, says : " By jurisdiction over the subject matter is meant the nature of the cause of action and of the relief sought ; and this is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers or in authority specially conferred." Where, however, the exercise of jurisdiction is dependent inherently, or made so by statute, upon particular facts or any particular status or condition (as where the proprietor of an estate must be dead before a court of probate will administer his effects, or a crime must be committed in the county where the court is holden), they should be made to appear by proper averments in the record ; otherwise the action of the tribunal would be *coram non judice*. *Davidsburgh* v. *Knickerbocker Insurance Co.*, 90 N. Y. 526 ; *Robinson* v. *Oceanic Navigation Co.*, 112 N. Y. 315, ( 2 L. R. A. 636 ; 19 N. E. 625.) The subject matter over which the board has been intrusted with power to act is simply to equalize the assessment of property, and to secure uniformity in valuations as between the different counties in the state ; (*Or. & Cal. Railroad Co.* v. *Croisan*, 22 Or. 393, 30 Pac. 219) ; but, before it can proceed in the premises, it must be conceded that the assessment rolls must have been prepared, equalized, and approved by the county authorities.

Its prescribed manner of procedure is to appoint a secretary, whose duty it is to compile into tabulated statements for its use abstracts of the " assessment rolls received " from the various counties, and, when it shall have equalized the different classes of property, the result shall be combined in one table, and the chairman and secretary shall certify to the secretary of state the rate per cent. to be added to or deducted from the assessed

valuation of each class of property in the several counties, and also the aggregate valuation as equalized.   Sections 4, 5 and 9 of an act to provide a state board of equalization, etc., (Sess. Laws 1891, p. 182).   The statute is somewhat ambiguous in its reference to the "assessment rolls received," as the board receives none of them; and we presume the allusion is to the rolls received by the secretary of state, certified to by the county clerks, under the seal of the court, as required by section 2788, Hill's Ann. Laws.   But the exercise by the board of its functions as an equalizing body is not made to depend upon the fact either that the various county rolls have been certified by the county clerks under the seal of the county courts, or that they have been received by or filed with the secretary of state; that is to say, these things are not imposed as conditions precedent to its assuming jurisdiction of the subject matter touching which it is empowered to act.   Indeed, the board acts not upon the rolls, but upon the abstracts compiled into tabulated statements made by its secretary; and it is not necessary that the rolls themselves should be filed with it or actually before it, while exercising its delegated powers.   When it has completed its deliberations, the duty is devolved upon it to combine the result into one table, which tabulated statement is intended to show, as it does in the present proceeding, the summaries of all the assessment rolls of the different counties, together with the changes made by the board in adding to and deducting percentages from the several classes of property; so that an inspection of the tabulated statement will disclose whether the board has acted upon the abstracts or summaries of the assessment rolls of all the counties in the state; and, if it has, jurisdiction to equalize them among the different counties appears by statutory intendment.   Such is the record, and the only record, prescribed, and it was de-

signed to evidence the fact that all the preliminary requirements to enable the board to act in the premises had been complied with.   If it had been deemed important that the certified rolls should have been actually received and filed by the secretary of state before the board should proceed with the exercise of its powers, the legislature would, no doubt, have indicated it in some direct manner, as it could easily have done.   But it has imposed no such conditions to the exercise of its designated powers, and prescribed but a simple record, which, when made up in substantial accord with the legislative intendment, is quite sufficient to establish jurisdiction. See *Palmer* v. *Bank of Zumbrota*, 65 Minn. 90 (67 N. W. 895); *Hoffman* v. *Lynburn*, 104 Mich. 494, (62 N. W. 728).

2.   Neither is the tribunal one of appellate jurisdiction. It is revisory, but not appellate.   A single test will demonstrate the proposition.   Mr. Brown, in his work on jurisdiction (section 19), says: "An appellate court is a court that does not have original jurisdiction, but reviews the acts of some subordinate court on appeal or by writ of error, and there affirms, reverses, or modifies the order, judgment, or decree of the inferior court, or, rather, the court of original jurisdiction."   Now, there is no appeal or writ of error provided for by which parties, municipalities, or the state may obtain the correction of errors of any subordinate officer or county board.   The state board is merely a part of the necessary machinery by which assessments are finally equalized as between the counties.   *California Land Co.* v. *Gowen*, 48 Fed. 771; *People ex rel.* v. *Salomon*, 46 Ill. 343. It must exercise its functions, whether errors have been suggested to it or not; so that the certified rolls cannot be said to answer the purposes of a transcript from an

inferior tribunal in conferring jurisdiction to exercise its
powers.

3. The office of a writ of review is to revise the pro-
ceedings of an inferior tribunal acting in the exercise of
its judicial functions, where it is made to appear that it
has exercised such functions erroneously, or to have
exceeded its jurisdiction, to the injury of some substan-
tial right of the plaintiff.   Hill's Ann. Laws, § 585.   It
is substantially the common-law remedy by certiorari,
which was invoked for the purpose of having the entire
record of the inferior tribunal brought up for inspection,
to determine whether it had jurisdiction, or had exceeded
its jurisdiction, or had failed to proceed according to the
essential requirements of the law.   *California Land Co.*
v. *Gowen*, 48 Fed. 775 ; *Donahue* v. *Will Co.*, 100 Ill. 94 ;
*Hyslop* v. *Finch*, 99 Ill. 171 ; *State ex rel.* v. *Dodge Co.*, 56
Wis. 79 ( 13 N. W. 680 ) ; *McAllilley* v. *Horton*, 75 Ala.
491 ; *Town of Camden* v. *Bloch*, 65 Ala. 236 ; *Township of
East Brunswick* v. *City of New Brunswick*, 57 N. J. Law
145 ( 30 Atl. 684).

4. It is alleged in the petition that the county court of
Marion County neglected and refused to make, certify,
or transmit to the secretary of state, or furnish said board
of equalization, any copy of the assessment roll of said
county, and that no duly certified or authenticated copy
thereof was before said board or considered by it.   But
the record or tabulated statement of the board shows
that it had the abstracts or summaries of the Marion
county roll before it, and that it actually equalized the
assessments of that county, together with all other coun-
ties in the state.   There is no pretense that the board
did not have or use a correct abstract of the roll subse-
quently filed in the secretary's office.   Now, if its secre-

tary, or a committee appointed for that purpose, or the board itself, procured such abstract or summary from the original roll ( and this is probably just what was done in the first instance ), instead of from the certified copy in the secretary's office, the evidence thus obtained would, although of an inferior kind, if acted upon, necessarily lead to results identical with such as would follow from a consideration of the evidence obtained from the rightful source ; so that, in any event, no harm could come to the petitioner.    It may have been an irregularity for the board to have proceeded to the consideration of the Marion county roll upon an inferior kind of evidence of its contents, but it was clearly not an excess of power or jurisdiction to so proceed, because it could perform its functions as well by a consideration of the evidence at hand.    But the case is even stronger than this.    The minutes of the board show that on the thirtieth day of December it began the preliminary consideration of live-stock in Marion County, "the rolls of the county having been received."    Suppose, as we may infer from these minutes, that the certified Marion county roll had been received by the board prior to its delivery at the secretary of state's office, and that, having the certified copy actually before it, but prior to its filing by the secretary of state, it considered and concluded the equalization of the assessments of all the counties in the state, Marion included ; could it be affirmed that the board exceeded its jurisdiction, and that its acts were void, simply because the roll had not been filed with the secretary of state and the abstract and summary made by the board's secretary after filing?    Even if there was error in such a proceeding, it could not have resulted to the injury of plaintiff in any substantial right.    And yet we are asked to set at naught the proceedings of the state board of equalization after it had become *functus officio,* which

would nullify, to say the least, the entire assessment and levy of the state taxes for the year 1896. Surely, it would require a cause of much greater potency to induce a court to entertain a proposition fraught with such far-reaching and deleterious results. Courts are always solicitous in the protection of the rights of individuals, however slightly they may be affected; but when no appreciable injury can result from the action of an inferior tribunal, though it may have proceeded somewhat irregularly, where it does not exceed its jurisdiction or power to act in the premises, the superior court will not intervene to quash the proceeding.

5. A further contention questions the classification made by the assessors. In their assessments of real property, they valued "town and city lots" separately from their improvements, which latter are embraced under the head of "improvements on town and city lots"; that is to say, "town and city lots" and "improvements on town and city lots" are assessed and valued under distinct heads and in separate columns upon the rolls. The state board of equalization, however, considered them as but a single class, and so equalized them. The objection involves the power and authority of the assessors to list such property in the manner indicated, it being claimed that town and city lots and their improvements must be assessed under one head, and that their valuation in separate columns upon the rolls was illegal and without authority of law, and hence that the board was without power to equalize the assessment under one classification among the different counties of the state. Under the law of the state, there are but two classes of real property for the purpose of assessment and taxation, viz.: City, village or town property, which is divided into lots and blocks, and all other real property which is described by

legal subdivisions or in such manner as to make the description certain : *Or. & Cal. Railroad Co.* v. *Croisan*, 22 Or. 400 (30 Pac. 219). It was the evident purpose of the legislature, in thus classifying real property, to secure a separate consideration of the values of either class, they being inherently different and distinct both in value, situation and condition, as well as to render it more convenient for owners of parcels to determine what charge or claim is being made against them on account of their ownership. It is clear that a listing of the two classes of property under one head, and an extension of values to a single column, would so confuse the assessment as to make it inconvenient, if not impracticable, to segregate and ascertain the assessed value of parcels belonging to either class, and would defeat the purpose of the law in requiring a separate consideration of value for assessment purposes. For these reasons, the direction for a separate listing and assessment of the designated classes is considered to be imperative and mandatory, and, if unobserved, renders the assessment void : *People* v. *Owyhee Min. Co.*, 1 Idaho, 409 ; Cooley, Tax'n (2d ed.) 395.

But *non constat* that a listing and valuation by subdivided classifications is also void. The statute gives a form of assessment roll which indicates the separate listing and valuation of the two classes of property, but by the section which contains the form it is provided that such additional columns shall be added as may be deemed necessary, varying the same as circumstances may require : Hill's Ann. Laws, § 2776. Under this statute, it is quite probable that whenever it is deemed necessary to a more convenient and accurate assessment of real property that the lands and the improvements thereon be valued separately, and extended in separate and distinct columns, the proper officer would have authority to so formulate the rolls, and the assessors would be war-

ranted, if not in duty bound, in following the directions for making them up. But, however this may be, under section 2769, Hill's Ann. Laws, the assessor may require every person to furnish a list under oath òf his real estate and all his personal property liable to taxation. These lists are usually made out upon blank forms furnished by the assessors. Now, if, for the purpose of a more perfect and definite ascertainment of the ownership, condition and true cash value of town and city lots, the owner is required to designate not only the land, but the improvements thereon, and they are valued separately, what objection can there be to the method thus adopted for the ascertainment of values? If the ownership of both lot and improvements are in one and the same person, it requires but an application of the simple process of addition for the ascertainment of the true cash value thereof. The method would seem to be a reasonable, if not a necessary, one for the convenient and more accurate ascertainment of ownership and of such values. But to go a step further : Suppose the assessor has carried the separate valuations thus ascertained, made and determined upon the assessment rolls into separate columns, which is probably just what has been done in every county in the state, would such an act render the assessment and consequently the rolls void, as it may pertain to that particular class of property, or would it amount to a mere irregularity which would not relieve the taxpayer from the payment of the taxes levied upon his property? For it must be conceded that, in order to oust the state board of equalization of jurisdiction to perform such of its functions as pertain to any particular class of property, the assessment roll must be absolutely void, and that an irregularity only could not produce such a result.

6. The state board is in no sense a board of review, with power to correct the errors of the county boards or the assessors. They deal with assessments of individuals, and an equalization of values between them ; and the state board with equalization between districts, towit, between the several counties in the state,—functions entirely dissimilar and distinct : *Or. Mtg. Sav. Bank* v. *Jordan*, 16 Or. 113 (17 Pac. 621) ; *Oregon & C. R. Co.* v. *Lane Co.*, 23 Or. 386 (31 Pac. 964) ; *Ramp* v. *Marion Co.*, 24 Or. 461 (33 Pac. 681) ; *Godfrey* v. *Douglas Co.*, 28 Or. 446 (43 Pac. 171) ; *Becker* v. *Malheur Co.*, 24 Or. 217 (33 Pac. 543) .

7. So, it is clear that the courts, through the instrumentality of a writ of review from the action of the state board, cannot correct the errors and irregularities of the assessors and county boards in making up the rolls.

We cannot think that such an act of the assessors would render the assessment absolutely void. It may be — and this we do not decide — that the rolls have been unnecessarily incumbered by carrying into them too much of the minutiæ of ascertaining the condition, ownership and values of this class of property ; but it may be treated as a surplusage that does not void the assessment thereof. The assessment is there, as is also the valuation ; and it needs but an addition of the separate valuations to the ascertainment of the aggregate, and all has been accomplished necessary to a valid assessment. No injury or harm would come to the taxpayer by the method pursued, and it is clear that he could not escape the payment of his tax upon that ground. Analogous cases seem to sustain this principle. In *Wall* v. *Trumbull*, 16 Mich. 228, it appears that the statute required that a certain bounty tax should be cast in the same column with other township taxes ; but, as a matter of

fact, it was placed upon the roll in a separate column, and it was held that this did not render the bounty tax void, as no one was injured thereby.

*Torrcy* v. *Inhabitants of Millbury*, 21 Pick. 64, comes nearer to the case at bar, and we cannot better set forth the facts and ruling in that case than by quoting somewhat extensively from the opinion of Chief Justice SHAW. He says : " The first objection to the irregularity of the assessment is that the assessors did not comply with the directions of the statute in making out the list containing the valuation and assessment of polls and estates, inasmuch as it did not exhibit in distinct columns ' the true value of real estate,' ' the reduced value of real estate,' and the same of personal estate, but only one column for real, and one for personal, headed ' value ' :  Rev. St. c. 7, §§ 15, 29, 30.  The Revised Statutes, in the sections cited, require that the list, amongst other particulars, shall distinguish ' true value ' and 'reduced value.'  The question is whether this irregularity renders the valuation and assessment void, so that each person taxed may take advantage of it, and recover back the amount paid. * * * We take it to be clear that the requisition in question is founded on the common custom of forming a column of ' reduced value,' which had existed before the statute, adopted for the ease and convenience of computation in apportioning the taxes.   But the reduced value is, of course, a fixed proportion of the true value, as a half, or quarter, 10 per cent., or the like.   The true value is first determined by the assessors in the manner provided by law ; that is, by returns, or, in default of returns being made, by appraisement ; and then the column of reduced value is found by computation, upon a uniform scale of reduction.   It follows, therefore, as a necessary consequence, that whether there be a column of reduced value or not makes no difference as to the actual

33 OR.—10.

amount of property for which each one on the list is assessed, or the rate which each and every one will have to pay. It is a requisition merely affecting the mode of framing the tax list, not affecting in any degree the rights of any taxpayer; and therefore the court are of opinion that it is directory, not a condition precedent, and that the failure to comply with it on the part of the assessors did not render the tax illegal or void.''

We think it clear that the assessment rolls are not rendered void by the manner of assessing town and city lots and their improvements, and that the jurisdiction of the state board was in no way affected thereby. The method pursued by the board itself was unobjectionable, as it considered the lots and their improvements in one class, and subjected both to a uniform percentage of addition or reduction in all cases; and this is all that could be required of it if the aggregates had been extended or carried into one column. We are therefore of the opinion that its acts in equalizing the values of this class of property are valid. What we have said here will apply with equal force to the board's action touching its equalization of values under one classification of all other real property, whether designated upon the roll under segregated headings or not.

8. We come now to the consideration of the board's action in the equalization of assessments as respects personal property. It appears from the tabulated statement that personal property was classified upon the assessment roll of Marion County under three heads only, viz. : "Railroad rolling stock," "livestock," and "personal property, except railroad rolling stock and livestock"; while the rolls of the other counties in the state contain some twelve or thirteen different classifications of the same species of property, and none of them correspond-

ing with the classifications in Marion except the one de-
nominated "railroad rolling stock." Now, the board has
attempted to equalize by taking each particular classifi-
cation, whether appearing upon the Marion County roll
or the rolls of the other counties, as a basis for its opera-
tion, and has added and deducted percentages accord-
ingly. For instance, in Baker County twenty per cent.
has been added to the aggregate valuation of horses and
mules, twenty per cent. to cattle, and twenty per cent.
deducted from swine, while sheep and goats remain the
same. In Benton County twenty per cent. is deducted
from the aggregate valuation of horses and mules, twenty
per cent. added to the cattle, twenty per cent. deducted
from sheep and goats, while swine remain the same ; and
thus are all these classifications observed in the equaliza-
tion of the several kinds of livestock in all the counties
except Marion, and as to it the state board has added ten
per cent. to the aggregate valuation of livestock, which
is a different classification, but comprises the four classi-
fications enumerated in the other counties. So, it has
in all the counties except Marion attempted to equalize
other personal property under such classifications as
"merchandise and stock in trade," "notes and accounts,"
"shares of stock," etc., but in Marion all these are com-
prised in one classification only.

The mode or manner in which the board shall equalize
personal property is prescribed by the act, which is that
it shall add to or deduct from the aggregate valuation of
the several kinds or classes thereof so as to make them
conform to their true cash value. See section 8 of the
act to provide a state board of equalization, etc., supra.
This is a legislative recognition that there exist different
kinds and classes of that species of property, but nowhere
is there any attempt, that we know of, to specify the
classifications, nor to indicate what kind of property shall

be comprised in each. This matter was probably intended to be regulated by the form of the assessment rolls prepared and sent out to the several county clerks, and by them distributed to the assessors : Hill's Ann. Laws, §§ 2776, 2848. The blank rolls are certainly intended as a direction to the county officials, and should be followed, as it tends to produce uniformity in classifications, which is essential to equality in assessment and taxation. Be that as it may, it is very evident that the state board could not, by adopting dissimilar classifications or such as are not uniform throughout all the counties as a basis for their deductions, produce that uniformity and equality in values contemplated by the constitution : Const. Or. art. I, § 32; art IX, § 1. "Equality in the rate of assessment," says WALDO, C. J., in *Crawford* v. *Linn Co.*, 11 Or. 484 (5 Pac. 738), "means proportional valuation." And to secure a uniform and proportional valuation of the different classes or kinds of personal property among all the counties was, no doubt, the purpose of the act. Horses and mules may have been valued relatively lower in Marion than in Baker and Benton, and cattle, sheep, and goats, and swine very much higher ; but, by a comparison with livestock in the other counties of the state,— and this is the only way by which relative values can be determined,— it may appear that livestock in Marion is assessed too high, which would necessitate a reduction thereof by the requisite percentage ; but this would actually reduce the valuation upon horses and cattle in Marion County, which is already relatively lower than its kind in Baker and Benton, so that the process would increase, instead of diminish, the disparagement between the values of horses and mules in Marion and the same class of property in Baker and Benton. A method that will produce such a result is radically wrong, and is subversive of the constitutional requirements touching as-

sessment and taxation. There must be uniformity of classification to produce proportional or uniform values among all the counties in the state. This is almost self-evident, and it is needless to discuss the proposition at greater length.

The plaintiff was assessed in Multnomah County upon merchandise and stock in trade, the valuation of which was raised by the state board twenty-five per cent.; but, the board having considered it under a different classification from that under which the same kind of personalty was considered in Marion, it has exceeded its powers, and the increase is void. There was no increase in Multnomah upon horses, so that the only injury which could have resulted to petitioner is by reason of the raise in the value upon his merchandise and stock in trade; and hence the judgment of the court will be that the action of the state board of equalization be set aside and declared void in so far as it attempted to equalize the valuation of the particular class or kind of personalty denominated "merchandise and stock in trade." Reversed and remanded, with directions to the lower court to enter judgment in accordance with this opinion.

Reversed.

Decided 24 October, 1898.